# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| YOLANDA HOUSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. CIV-08-374-D |
| | ) | |
| INDEPENDENT SCHOOL DISTRICT NO. 89 | ) | |
| OF OKLAHOMA COUNTY, OKLAHOMA, | ) | |
| a/k/a OKLAHOMA CITY PUBLIC SCHOOLS; | ) | |
| TIMOTHY BAILEY, in his individual and | ) | |
| official capacity as Human Resources Support | ) | |
| Personnel Supervisor Employee Compliance | ) | |
| Officer for the Oklahoma City Public Schools; | ) | |
| and DR. MICHAEL SHANAHAN, in his | ) | |
| individual and official capacity as Senior Human | ) | |
| Resources Officer for the Oklahoma City | ) | |
| Public Schools, | ) | |
| | ) | |
| Defendants. | ) | |

## O R D E R

Before the Court is the Motion for Summary Judgment [Doc. No. 34] of Independent School

District No. 89 of Oklahoma County, Oklahoma, a/k/a Oklahoma City Public Schools ("District"),

seeking judgment on all claims asserted against it in this action.[1] Plaintiff responded to the Motion,

the District filed a reply, and Plaintiff filed a Court-authorized sur-reply.

Plaintiff, a former District employee, asserts claims based on occurrences during her

employment tenure as well as her termination. She contends the District is liable to her for 1) racial

discrimination, harassment and retaliation in violation of 42 U. S. C. § 1981; 2) race and gender

discrimination, harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964

---

[1] In a separate joint motion [Doc. No. 35], Defendants Timothy Bailey and Dr. Michael Shanahan seek judgment on Plaintiff's claims asserted against each of them. That motion will be addressed in a separate order.

("Title VII"); 3) violation of her due process and equal protection rights under the Fourteenth Amendment; 4) failure to pay wages earned in violation of the Fair Labor Standards Act and Oklahoma law; 6) breach of her employment contract; 7) negligent supervision, training, and retention of employees; 8) intentional infliction of emotional distress; and 9) wrongful termination in violation of Oklahoma public policy.[2]

I. Summary judgment standards:

Summary judgment is proper where the undisputed material facts establish that a party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact is one which may affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). To dispute a material fact, the non-moving party must offer more than a "mere scintilla" of evidence; the evidence must be such that "a reasonable jury could return a verdict" for that party. *Id.* The facts and reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005).

If the undisputed facts establish that a plaintiff cannot prove an essential element of a cause of action, the defendant is entitled to judgment on that cause of action. *Celotex*, 477 U.S. at 322. However, a defendant need not disprove the plaintiff's claim; it must only point to "a lack of evidence" on an essential element. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). The burden then shifts to the plaintiff to go beyond the pleadings and present facts, admissible in evidence, from which a rational trier of fact could find for her; conclusory arguments are insufficient, as the facts must be supported by admissible evidence reflected in affidavits,

---

[2]Although some of these claims are also asserted against Timothy Bailey and Dr. Michael Shanahan, this Order addresses the claims only as they apply to the District.

deposition transcripts, or specific exhibits incorporated in the parties' summary judgment briefs. *Ford v. West,* 222 F. 3d 767, 774 (10ᵗʰ Cir. 2000); *Adler,* 144 F.3d at 671-72.   It is not the court's responsibility to attempt to find evidence which could support a plaintiff's position. *Id.* at  672.

## II. Evidence in the record:

In this case, the parties submit extensive exhibits consisting of, *inter alia*, deposition testimony, Plaintiff's District employment records, minutes of Oklahoma City Board of Education meetings, and portions of the District's employment policies.[3]   Although Plaintiff denies or partially denies all but eight of the 46 facts which the District lists as undisputed, many of Plaintiff's "denials" actually agree with the stated fact, but add argument designed to show that the fact does not preclude recovery on one or more of her claims.   Such statements are more properly reserved for the responsive argument, rather than presented as an attempt to dispute a fact which is clearly evidenced by the record; their characterization as partial denials of undisputed fact statements is not helpful to the Court.   As a result, in order to determine the undisputed material facts relevant to the Motion, the Court has independently reviewed the extensive record.

The  record reflects Plaintiff, an African American female,  was hired by the District on November 21, 2005, and  she was terminated on October 22, 2007.  Her initial job title was Child Nutrition Services Training Specialist, and she worked in the District's Child Nutrition Services ("CNS") department.     In that capacity, she maintained records of CNS personnel assigned to

---

[3]Plaintiff asks the Court to strike some of the District's factual statements, arguing the evidence cited in support of the statements is inadmissible hearsay.  *See* Plaintiff's response to District Fact Nos. 20, 24,25, 30 and 31.  The challenged evidence consists of minutes of District Board meetings, email communications  maintained by the District, and memoranda or minutes memorializing other District meetings.  As the District points out in its reply, such material consists of records reflecting regularly conducted activities of the District or the Board of Education and, pursuant to Fed. R. Evid. 803(6),constitutes an exception to the hearsay rule.   To the extent the materials reflect Board of Education meeting agendas or minutes, they are public records or reports which qualify for the Fed. R. Evid. 803(8)(A) hearsay exception.  Plaintiff's request to strike these exhibits is denied.

District schools; her work involved, *inter alia,* entering data on the computer system, including payroll and benefits information as well as work schedules and assignments. The data was used to determine the compensation received by certain CNS employees. Plaintiff performed this work at the CNS office, which was located in a building separate from the main District office; her supervisor was CNS Director Steve T. Gallagher ("Gallagher").

Defendant Timothy Bailey ("Bailey") was the District's Support Personnel Supervisor and Employee Compliance Officer. Defendant Dr. Michael Shanahan ("Shanahan") was District Senior Human Relations Officer.

In January of 2007, Plaintiff was notified that her position at the CNS office was being eliminated and that she would be reassigned to the District's Human Resources department at the District's main office. She would no longer be supervised by Gallagher, but, instead, by Bailey. Plaintiff was told by Bailey that she would be terminated if she did not accept the transfer to Human Resources because her position at CNS was being eliminated and the job duties were being restructured. Bailey provided her with a job description for the position at Human Resources and met with her to explain the duties.

According to the District, Plaintiff was relocated in an effort to improve the accuracy and efficiency of the CNS payroll data functions assigned to her. In January of 2007, CNS Director Gallagher knew there were errors in some CNS employees' paychecks. Gallagher dep., District Exhibit 5, p. 25, lines 5-15. Bailey also knew about the errors, and asked Gallagher how the problem could be solved. *Id.*, p. 26, lines 1-3. Gallagher believed the errors could be corrected if the data input responsibilities were performed at the District main office instead of the CNS office, because few employees at CNS were familiar with the computer system; the District office included

more personnel with computer expertise.   He believed relocating the CNS payroll data functions assigned to Plaintiff would improve communications and result in increased accuracy.  *Id.*, p. 27, lines 1-13; Bailey dep., District Exhibit 2, p. 29, lines 20-25; p. 30, lines 1-15.   District Senior Human Relations Officer  Shanahan agreed, and he approved the decision to relocate the position. Shanahan dep., District Exhibit 4, p. 47, lines 1-13.  In his deposition, Shanahan was expressly asked if the transfer was a punitive action directed at Plaintiff, and he said it was not.  Shanahan dep., District Exhibit 4, p. 47, lines 17-23. According to Shanahan, the relocation  was a "strategic change to make the process more efficient, more accurate, and more effective." *Id.*,  lines 21-23.

After discussing the transfer and job description with Bailey, Plaintiff had reservations about relocating.  On January 25, 2007, she met with Shanahan to discuss the transfer and the duties she would perform at the District office.  In a January 26 email to him, Plaintiff thanked him for meeting with her and stated that "communicating with you helps me to understand the reasons for the transition."  Plaintiff's Exhibit 21.  She added that, after their meeting, she believed "this will be a stable and productive move that will benefit us all.  I look forward to becoming a team player and gain as much knowledge as I possibly can to move forward in the directions of the Human Resources department." *Id.*

Plaintiff accepted the transfer and began work at the Human Resources department on or about February 1, 2007.  The documents evidencing her transfer show that she was transferred from the position of "CNS Training Specialist" to "CNS Attendance Analyst/Human Resource Specialist."  Defendant's Exhibit 6.  There was no change in her salary, benefits, or status. Her job responsibilities included data entry involving inputting and maintaining personnel data records for CNS employees; a copy of her job description is submitted as District Exhibit  3.  According to the

job description, her responsibilities included maintaining and verifying the accuracy of employment forms, individual employee leave records, attendance records, and absentee reports; in addition, she was to provide back-up services for other employees and assist others during peak work periods. District Exhibit 3. The position did not include any training responsibilities. Bailey dep., District Exhibit 2, p. 35, lines 3-5. According to Bailey, it was his understanding that Gallagher would assign any training functions to an existing CNS employee, as Plaintiff's former position there was being eliminated. *Id.*, p. 30.

Plaintiff agrees her position was a professional or technical position which was not covered by the District's collective bargaining agreement. Plaintiff had a written contract of employment. On February 19, 2007, Plaintiff signed her employment contract for the 2006-07 school year; a copy is submitted as District Exhibit 14.

During the first month she worked in the Human Resources department, Plaintiff's desk was moved three times. However, she remained in the final location until her October 22, 2007 termination.

After Plaintiff's transfer, Bailey was critical of her work performance, noting the errors in paychecks continued to be a problem; Bailey maintained a log of notes regarding payroll computation errors and complaints he received about inaccurate overtime and other compensation. A copy of the chronological summary he prepared is included in the record as a part of District Exhibit 19. Bailey's summary also noted Plaintiff's tardiness and absenteeism.

On or about April 6, 2007, Bailey gave Plaintiff a written reprimand regarding what he considered unsatisfactory job performance. Specifically, the reprimand stated that, on April 6, Bailey observed Plaintiff "socializing and not discussing support issues and not satisfactorily

performing the required functions of your job." Reprimand, District Exhibit 7. Bailey added that he considered this "poor performance" and "not satisfactory." *Id.* Plaintiff does not dispute that she refused to sign the written reprimand.

On or about April 11, 2007, Bailey prepared another written reprimand regarding Plaintiff's unsatisfactory performance; a copy is submitted as District Exhibit 8. In that reprimand, Bailey stated that Plaintiff left the Administration Building at approximately 12:15 p.m. on April 9, 2007 and at approximately 10:17 a.m. on April 11, 2007 without first notifying her immediate supervisor. He added that, on the second occasion, her absence left no one in the Support Personnel Area to assist customers, because two other employees were absent due to illness or vacation. Plaintiff denies that she received this reprimand, and correctly notes that it does not reflect Bailey's signature.

The District has a policy whereby employees not covered by the collective bargaining agreement may pursue a complaint regarding a perceived "violation, misinterpretation or misapplication of a Board Policy or an Administrative Regulation." *See* Staff Complaint Procedure ("Procedure"), Plaintiff's Exhibit 26. According to the Procedure, the employee must first discuss the violation with her immediate supervisor in an attempt to informally resolve the matter; if no resolution is achieved, the employee may pursue a written complaint process, described as "Formal Resolution," involving three levels of review. *Id.* At Level I, the employee submits a written complaint to her supervisor, who is charged with conducting a meeting with the employee and then issuing a written decision. Plaintiff's Exhibit 26, p. 1. If the employee is dissatisfied with that decision, she may file a Level II complaint, which constitutes an appeal of the Level I decision. At Level II, the employee may designate a representative to present her appeal, and a hearing is required; at the hearing, the employee may call witnesses and offer other evidence in support of her

appeal. *Id.,* p. 2. A written decision with findings of fact and conclusions is prepared by the person conducting the hearing. An appeal of an unfavorable Level II decision may be presented at Level III. At Level III, the matter is placed on the agenda of the Board of Education, which acts as an "appellate body" and reviews the Level II decision. Plaintiff's Exhibit 26, pp. 2-3. The Board may elect to receive additional written evidence; however, it may confine its review to the existing record. *Id.*, p. 3. The Board's decision is final.

On April 11, 2007, Plaintiff submitted a Level II complaint form regarding Bailey. She described her complaint as "Mrs. Houston's supervisor, Mr. Tim Bailey is harassing Mrs. Houston." District Exhibit 10. In the form's section describing the relief sought, Plaintiff stated, "Mr. Bailey should discontinue harassing Mrs. Houston and conduct himself in a professional manner towards her." *Id.* In the section requesting the "disposition at Level I," Plaintiff stated, "supervisor refused to schedule a Level I meeting." District Ex. 10. Plaintiff did not identify any incidents or otherwise explain the nature of the harassment about which she complained. Although the District maintains written policies prohibiting discrimination,[4] she did not cite any District policy or procedure which she claimed had been violated. The complaint contains no reference to gender or race.

According to Bailey, he did not take action on the Level I complaint because he did not receive it. Bailey dep., District Exhibit 2, p. 65, lines 1-3; p. 66, lines 10-14. In any event, Plaintiff followed District procedure by pursuing a Level II complaint, and the record reflects that her Level II complaint was considered at a May 2, 2007, hearing before Hearing Officer Weldon Davis. Plaintiff was represented by David Gray, President of the Oklahoma City Federation of Classified Employees; Mr. Gray presented witnesses on behalf of Plaintiff, including District employees

---

[4]Copies of the policies are submitted as District Exhibit 22.

Reggie Widener and Gloria Wilson; Plaintiff and her husband also testified. Plaintiff's dep., District Exhibit 1, p. 85, lines 10-24; District Exhibit 19.

On May 9, 2007 Weldon Davis issued a written decision concluding that Bailey's actions were appropriate for his position and denying any relief to Plaintiff. A copy of his decision is included in District Exhibit19. Plaintiff exercised her right to appeal that decision at Level III, and the Board sustained the Level II decision at its June 4, 2007 meeting. District Exhibit 13.

It is not disputed that, on or about May 7, 2007, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). In the Charge, Plaintiff stated:

> I was hired as a "Training Specialist," however, have been unduly harassed by my supervisor; in that I have been assigned and held responsible for duties not within my current job classification. I have been moved from one office to another despite my objections and have been subjected to criticism over projects that are outside my area of responsibility and are actually the responsibility of other employees. I have been talked down to and humiliated in front of other peers. Despite my complaints, the harassment continues.

EEOC Charge, District Exhibit 11. Plaintiff added that no action had been taken to stop the harassment, and stated,"I believe I have been discriminated against due to my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended." *Id.* The EEOC Charge does not allege gender discrimination. The record does not reflect when the District received the Charge, nor does it identify District employees who were aware of the Charge.

On May 31, 2007, Bailey met with Plaintiff to present her performance evaluation; Gloria Wilson also attended the meeting. The evaluation rated Plaintiff at the lowest performance level, "does not meet job expectations," on almost all categories; it contained specific comments regarding perceived deficiencies in her performance, and the overall performance rating was also negative. A copy of the evaluation is submitted as District Exhibit 12. Plaintiff agrees she refused to sign the

evaluation; Bailey noted Plaintiff said she "was uncomfortable with me evaluating her." District Exhibit 12.

Following the May performance evaluation, Bailey continued to find fault with Plaintiff's job performance, as reflected in his chronological summary included in District Exhibit 19. No additional reprimands or notifications were prepared by Bailey.

At some time in June or July of 2007, Plaintiff contacted the new District Superintendent, Dr. John Q. Porter, and asked to meet with him regarding her employment. Although she testified that she sent him an email expressing her concerns, the record does not contain a copy of that communication. However, the record reflects that she communicated with him, and he sent Shanahan a memorandum. On August 3, 2007 Shanahan sent Dr. Porter a memorandum responding to Porter's July 25, 2007 memorandum regarding "an inquiry" by Plaintiff "alleging "payroll falsification." Shanahan's memorandum, included with District Exhibit 19, reflects Plaintiff had complained to Porter that her job title changed without her knowledge and that she was concerned about a hostile work environment. *Id.* Shanahan also referenced her interest in transferring to another position in the District.

Shanahan's memorandum details the background regarding Plaintiff's transfer to Human Resources, the concerns regarding her work performance, and the disposition of her Level II and III complaints. He stated that Plaintiff had expressed interest in at least one open job position, adding that the supervisor for that position had authority to hire the applicant of his choice. Shanahan also noted Plaintiff had filed an EEOC charge, which remained pending. Shanahan told Porter that the District's legal counsel, Tammy Carter, was aware of the charge. He concluded by recommending that Dr. Porter remind Plaintiff of her responsibility to perform her job at a satisfactory level, that

she would be treated in the same manner as other employees with respect to her interest in a transfer, and that she "has a part to play in the contribution toward her successful employment." *Id.*

Plaintiff contends that she sought a transfer to approximately eight different job positions during the spring and summer of 2007. The documentation she submits consists of brief email messages requesting additional information about several positions. She contends, however, that she applied for two specific positions. The first was the communications specialist position, and the second is the homeless education coordinator position. She was interviewed for the latter position, but was not selected. With respect to the communications specialist position, she alleges the supervisor in charge of hiring did not receive her application and resume.

On August 22, 2007, Shanahan sent Plaintiff an email scheduling a meeting with her later that day; she replied that she would not meet with him; he sent a second email, directing her to meet with him. District Exhibit 15. When Plaintiff did not arrive for the scheduled meeting, Shanahan went to her desk, but she was not there. He located her outside the building, talking with two other women. Plaintiff told him she would not meet with him without representation; she asked the two other women if they would attend the meeting, and they declined. Plaintiff's dep., District Exhibit 1, p. 131, lines 9-25; p. 132, lines 1-20.

Shanahan regarded Plaintiff's conduct as insubordination, and he prepared a memorandum to her in which he suspended her, with pay, effective immediately. August 22, 2007 memorandum, District Exhibit 17. The memorandum also informed Plaintiff that Shanahan was recommending that the Board terminate her employment. *Id.*

On October 22, 2007, the Board members met to consider Shanahan's recommendation and, following a hearing, the Board voted to terminate Plaintiff. *See* Minutes of October 22, 2007 Special

Meeting of the Board, District Exhibit 19, pp. 1-7.

On or about February 22, 2008, Plaintiff filed a second EEOC Charge of Discrimination in which she alleged that she had been terminated because of her race and her gender. District Exhibit 21. The record does not reflect the EEOC's disposition of this or the previous Charge of Discrimination.

III. Analysis - Federal claims of discrimination:

A. Standard of proof:

Plaintiff's federal claims of employment discrimination are based on Title VII, § 1981, and § 1983. In summary, she contends that the District a) discriminated against her on the basis of her race and gender during her employment; b) subjected her to a hostile work environment based on her race and gender; c) retaliated against her because she exercised rights protected by federal law when she complained of discrimination and/or harassment; and d) discriminated or retaliated against her by terminating her employment.

Plaintiff's Title VII claims of discrimination, hostile environment, retaliation, and termination are governed by the burden-shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973). *Young v. Dillon Companies*, 468 F.3d 1243, 1249 (10th Cir. 2006). Her § 1981 and § 1983 claims are also governed by that analysis. *Baca v. Sklar,* 398 F. 3d 1210, 1218 n. 3 (10th Cir. 2005); *Kendrick v. Penske Transportation Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000). According to this analysis, Plaintiff must initially establish a *prima facie* case of discrimination/retaliation based on her status; if she does so, the burden shifts to the District to present a justifiable, non-discriminatory reason for its conduct. *Id.* If the District presents such a reason, then the burden of proof shifts back to Plaintiff, who must show that the proffered

justification for the District's actions is a mere pretext for unlawful employment discrimination. *McDonnell Douglas*, 411 U.S. at 804.

A defendant's burden of establishing a legitimate, nondiscriminatory reason for its employment action is "exceedingly light." *Montes v. Vail Clinic, Inc.*, 497 F. 3d 1160, 1173 (10th Cir. 2007). Once a defendant proffers such reason, the plaintiff must show "there is a genuine issue of material fact regarding whether the ...justification was pretextual." *Id.* (citing *Young v. Dillon Companies, Inc.*, 468 F. 3d 1243, 1249 (10th Cir. 2006). To show that the proffered reason is a mere pretext for discrimination, a plaintiff must show that the reason is "'so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reasons were unworthy of belief.'" *Id.* (quoting *Young v. Dillon Companies, Inc.,* 468 F. 3d 1243, 1249 (10th Cir. 2006)). "Even though all doubts concerning pretext must be resolved in plaintiff's favor, a plaintiff's allegations alone will not defeat summary judgment. Mere conjecture that the employer's explanation is pretext is insufficient basis to defeat summary judgment." *Jencks v. Modern Woodmen of America*, 479 F. 3d 1261, 1267 (10th Cir.2007) (citations omitted).

B. Application:

1. Discriminatory treatment claim:

Plaintiff alleges that she was subjected to discriminatory or disparate treatment during her employment based on her race and/or gender. The "three essential elements" of a *prima facie* case of disparate treatment are: 1) Plaintiff belongs to a protected class; 2) she suffered an adverse employment action; and 3) similarly situated employees who are not members of the minority class were treated more favorably. *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir.2005); *Baker v. Blue-Cross Blue Shield of Kan., Inc.* 128 F. App'x 701, 703 (10th Cir.2005) (unpublished

opinion) (citing *Trujillo v. University of Colorado Health Sci. Ctr.*, 157 F.3d 1211, 1215 (10th Cir.1998)). The Circuit has "acknowledged that the framework is flexible and that a comparison to similarly situated co-workers need not be made in every case." *Baker*, 128 F. App'x at 703 (citing *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1195 & nn. 6 & 7 (10th Cir.2000)). Thus, the third element may be satisfied by evidence that the challenged action took place "' under circumstances giving rise to an inference of discrimination.'" *Barone v. United Airlines, Inc.*, 2009 WL 4547800, at *9 (10th Cir. Dec. 7, 2009) (unpublished decision) (quoting *E. E. O. C. v. PVNF, Inc.*, 487 F. 3d 790, 800 (10th Cir. 2007)). These elements are the same whether the case is brought under § 1981 or Title VII. *Dean v. Boeing Co.*, 260 F. App'x 124, 128 (10th Cir. 2008) (unpublished opinion) (citing *Drake v. City of Fort Collins*, 927 F.2d 1156, 1162 (10th Cir. 1991)).

In this case, it is not disputed that Plaintiff belongs to a protected class, as she is female and African American. The District contends, however, that the undisputed facts show she did not suffer an adverse employment action prior to her termination; even if an adverse action occurred, the District argues Plaintiff cannot show that it was based on her race or gender.

An adverse employment action occurs "under circumstances that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Stinnett v. Safeway, Inc.*, 337 F. 3d 1213, 1217 (10th Cir. 2003). A "mere inconvenience or an alteration of job responsibilities" does not constitute an adverse employment action for purposes of a disparate treatment claim.[5] *Piercy v. Maketa*, 480 F. 3d 1192, 1203 (10th Cir. 2007). To determine

---

[5]Where a plaintiff claims an adverse action was based on retaliation for the exercise of Title VII rights, the concept of an adverse employment action differs. *Piercy,* 480 F. 3d at 1203 n. 12. That analysis is applied in this case to Plaintiff's retaliation claim, discussed *infra.*

whether an adverse employment action occurred, the Court must employ a "case-by-case approach, examining the unique factors relevant to the situation at hand." *Id.*

Plaintiff argues she suffered several discriminatory adverse employment actions prior to her termination. First, she contends that she was transferred from the CNS department to the Human Resources department, and she was told if she did not accept the transfer, she would be terminated. Next, she argues that, during the first month following her transfer, her desk was moved three times. She also contends that she did not have adequate access to the computer system used to perform her job duties. She further argues that, prior to her termination, she applied for other positions but was not hired.

a. Transfer to Human Resources department:

Although it is not disputed that Plaintiff was relocated from CNS to the Human Resources offices, it is also not disputed that the transfer did not result in a change in salary, status or benefits. The District states that the transfer occurred because they determined the work performed by Plaintiff should be in the Human Resources department rather than in CNS, and the position at CNS was eliminated. The District agrees Plaintiff was told that no job position would remain at CNS and, as a result, she would be terminated if she did not accept the transfer.

Plaintiff now argues her former position was not eliminated, claiming the District has not offered evidence to show its elimination. However, the record before the Court is to the contrary. There is no evidence that another person held the position of "CNS Training Specialist" after Plaintiff relocated, nor is there evidence that the position remained open and available to others. Plaintiff argues the District's official form showing the change did not state her previous position was being eliminated. Plaintiff also attempts to argue that the position she held at CNS was not

eliminated because the computerized payroll records continued to reflect her former job title. The record establishes that the documentation required to effect the change in her title for this purpose was not completed until June 2007; her transfer occurred in January, and she began working at the Human Resources department on February 1, 2007. However, the record establishes that the initial transfer document reflected a change in her job title. District Exhibit 6. Plaintiff is correct in noting that the title change was not made on the computer system until June, 2007. Plaintiff's Exhibit 18. That the paperwork required to input the change in title in the computer system was not timely completed does not alter the fact that, upon the relocation of her position, Plaintiff's job title was changed. Nor does this support a contention that her previous position at the CNS office remained open to job applicants.

Even if the position had not been eliminated, Plaintiff's evidence is insufficient to show that the transfer constituted an adverse employment action. A transfer to a lateral position with no significant changes in the conditions of employment does not constitute an adverse employment action. *Sanchez v. Denver Public Schools*, 164 F. 3d 527, 532 (10th Cir. 1998). In this case, the evidence suggests that Plaintiff's responsibilities were changed to some extent after her relocation; however, "an alteration of job responsibilities," without more, does not constitute an adverse employment action. *Id.* Nor is the fact that Plaintiff viewed the transfer negatively sufficient to evidence an adverse action. *Sanchez*, 164 F. 3d at 432 n. 6.

To the extent Plaintiff seeks to assert a claim based on the contention that her transfer was discriminatory, she fails to present evidence sufficient to create a material fact dispute from which a reasonable jury could conclude the transfer constituted an adverse employment action. Even if she had satisfied her *prima facie* burden, however, the District has satisfied its burden of presenting a

non-discriminatory reason for the transfer.  As discussed, *supra*, the evidence in the record establishes that the decision to transfer the position held by Plaintiff was an effort to improve the accuracy and efficiency of the maintenance of payroll records for which she was responsible. Plaintiff attempts to show that this was not the true reason for the transfer, arguing that Bailey, Gallagher and Shanahan did not offer consistent testimony regarding the details of their conversations and the decision to move the position to the Human Resources department.  As the District points out in its reply, however, the testimony of the three individuals, when read in its entirety, reflects the consistent explanation that the transfer was motivated by a desire to improve efficiency and accuracy and was not directed at Plaintiff personally.

Plaintiff has offered insufficient evidence to create a material fact dispute regarding whether the justification for the transfer was a mere pretext for race or gender discrimination; there is insufficient evidence from which a jury could conclude that the true reason was motivated by race or gender discrimination.

b.  Movement of desk:

Plaintiff also contends she was subjected to discrimination because her desk was moved three times within the first month of her transfer.  It is not disputed, however, that her work station remained the same thereafter.    There is no evidence in the record to suggest that Plaintiff was isolated from other employees because of her race or gender; nor does she offer any evidence to explain her contention that repositioning her desk was discriminatory.  While she indicated that she preferred the placement of her work station at CNS, that is not enough to show an adverse employment action.  *See, e.g., Heno v. Sprint/United Mgmt. Co.*, 208 F. 3d 847, 851 (10th Cir. 2000) (relocating senior sales representative's desk while she was on sick leave and short-term disability

leave did not constitute an adverse employment action).

Plaintiff has not submitted sufficient evidence to show that the movement of her desk constituted an adverse employment action based on her race or gender.

c.  Applications for other District employment positions:

Plaintiff next contends the District discriminated against her by failing to hire her for several positions for which she applied during her employment.  To establish a *prima facie* case based on a failure to hire or to promote, Plaintiff must establish that 1) she was a member of a protected class; 2) she applied and was qualified for the position at issue; 3) despite being qualified, she was not selected; and 4) thereafter, the position was filled or remained available.  *Jones v. Barnhart*, 349 F. 3d 1260, 1266 (10th Cir. 2003);  *Amro v. Boeing Co.*, 232 F. 3d 790, 796 (10th Cir. 2000).

Because Plaintiff is a member of a protected class, the initial element is satisfied.  With respect to the remaining elements, the Court finds that Plaintiff has submitted insufficient evidence to satisfy her *prima facie* burden.    She contends she applied for and was interviewed for a communications specialist position, and she believes the white male hired for that position is less qualified than Plaintiff.  According to Plaintiff, the other position for which she applied was  the homeless education coordinator position; upon inquiry, she learned that the supervisor did not receive her application.  In her deposition, Plaintiff testified that she had no basis to believe the person to whom she submitted the application had any reason to discriminate against her.  With respect to her claim regarding the communications specialist position, her only contention is that she observed Bailey talking to the supervisor responsible for selecting the applicant for that position.

The Court finds that this very limited evidence is insufficient to show that Plaintiff was qualified for the positions she sought and that a less-qualified person was selected.  Although

Plaintiff submits her resume showing her education and job experience, she does not present evidence to show that her background constituted a qualification for the specific jobs she sought. The record indicates a Caucasian male was hired for the communications position, and Plaintiff submits an affidavit from another former District employee who criticizes that individual's work performance and opines that he was not qualified for the position. Plaintiff's Exhibit 8. The former employee's opinion regarding the individual's qualifications is not dispositive, as she was not the person making the hiring decision. Furthermore, she expresses no knowledge regarding Plaintiff's qualifications for the position in question, although she states that Plaintiff was very professional, and the employee had no problems in dealing with her. *Id.*

Even if Plaintiff's evidence was sufficient to satisfy her *prima facie* burden in this regard, the District states that the hiring decisions were legitimately made by the supervisors for the applicable departments. Plaintiff has not submitted evidence to show that the basis for selection was a pretext for race or gender discrimination directed at Plaintiff. The Court concludes that the District is entitled to judgment on this claim.

For the foregoing reasons, the Court concludes that Plaintiff's claims of disparate treatment, even when viewed collectively, are not supported by evidence from which a reasonable jury could conclude that the actions were motivated by race or gender discrimination. The District is entitled to judgment on the claims of discriminatory treatment under federal law.

2. Hostile environment claim:

Plaintiff also contends that she was subjected to an unlawful, hostile working environment based on her gender or race. Hostile work environment claims are actionable under Title VII and § 1981. *Equal Employment Opportunity Comm'n v. PVNF, L.L.C.,* 487 F. 3d 790, 798 (10th Cir.

2007); *McCowan v. All Star Maintenance,* 273 F.3d 917 (10th Cir. 2001). To establish a claim based on a hostile work environment, Plaintiff must prove: 1) she is a member of a protected group; 2) she was subjected to unwelcome harassment; 3) that harassment was based on her membership in the protected group; and 4) due to its severity or pervasiveness, the harassment altered a term, condition, or privilege of her employment and created an abusive work environment. *Semsroth v. City of Wichita*, 304 F. App'x 707, 722 (10th Cir. 2008) (unpublished decision) (citing *Harsco Corp. v. Renner*, 475 F. 3d 1179, 1186 (10th Cir. 2007). To overcome a summary judgment motion based on a hostile work environment, Plaintiff "must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment," and that she was "targeted for harassment" because of her race, national origin, or gender. *Herrera v. Lufkin Indus., Inc.,* 474 F. 3d 675, 680 (10th Cir. 2007).

A "'mere utterance of an...epithet which engenders offensive feelings in a employee'" is not sufficient to satisfy these requirements. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)(quoting *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 64 (1986)). "A plaintiff does not make a showing of a pervasively hostile work environment by demonstrating a few isolated incidents" of enmity or "sporadic" slurs. *Id.* Instead, there must be a "steady barrage" of "opprobrious comments." *Herrera*, 474 F. 3d at 680. The Court must examine the circumstances both objectively and subjectively, and consider whether a reasonable person in plaintiff's position would have found the atmosphere hostile. *Id.* The relevant circumstances "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

employee's work performance." *Harris*, 510 U.S. at 23.   Although this inquiry has been described as "quintessentially a question of fact" which is typically unsuited for summary judgment disposition, *Tademy v. Union Pacific Corp.,* 520 F. 3d 1149, 1162 (10th Cir. 2008), summary judgment may be proper where the circumstances are such that a rational jury could not find in Plaintiff's favor.   *Id.*   Thus, where  a plaintiff offers evidence of a "few isolated incidents" of harassment, such evidence is insufficient to establish the "severe or pervasive" harassment which is actionable, and judgment is proper.   *Tademy*, 520 F. 3d at 1162; *Herrera*, 474 F. 3d at 680 n. 3. Where a few incidents are sufficiently severe, however, the "cumulative weight" of those incidents may be enough to withstand summary judgment and create a fact question for a jury. *Tademy*, 520 F. 3d at 1162.

Plaintiff's only reference to a statement that could arguably be viewed as racially harassing is a comment she attributes to Bailey, who allegedly told her three times that she could not "serve two masters."  Plaintiff's Exhibit 20.   She viewed this as offensive, construing it as having a racial connotation.   Other than that comment, there is nothing in the record from which a reasonable jury could conclude that any comment or criticism of Plaintiff by Bailey or anyone else was based on her race.    Even if the comments could reasonably be construed as having a racial connotation, the comments are insufficient to create a hostile work environment.  While Plaintiff contends that Bailey "harassed" her by unfairly criticizing her work habits and her work performance, the evidence is insufficient to constitute a severe and pervasive racially hostile work environment.

Plaintiff cites no incidents of harassment  based on her gender.   There is no evidence in the record that could create a question of fact to support a claim that she was subjected to gender-based comments or conduct sufficient to create a hostile work environment on that basis.

Plaintiff has failed to submit evidence sufficient to support a *prima facie* case that she was subjected to a hostile work environment. The District is entitled to judgment on this claim.

3. Unlawful retaliation claim:

Plaintiff's claims of unlawful retaliation under Title VII and § 1981 are governed by the *McDonnell Douglas* burden shifting analysis. *Pinkerton v. Colorado Dept. of Transportation,* 563 F.3d 1052, 1064 (10th Cir. 2009); *Somoza v. University of Denver*, 513 F.3d 1206, 1210 (10th Cir. 2008). Thus, the Court must first determine if she has satisfied her *prima facie* burden of proof.

To satisfy her *prima facie* burden, Plaintiff must show 1) she engaged in protected opposition to discrimination; 2) her employer subsequently took action that a reasonable employee would have found materially adverse; and 3) there is a causal connection between her protected activity and the adverse action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006); *Argo v. Blue Cross and Blue Shield of Kansas*, 452 F.3d 1193, 1202 (10th Cir. 2006); *Metzler v. Federal Home Loan Bank of Topeka,* 464 F.3d 1164, 1171 (10th Cir. 2006).

To show she engaged in protected opposition to discrimination, a plaintiff need not have filed a formal charge with the EEOC, as protected activity may consist of "complaining informally to supervisors." *Medina v. Income Support Division,* 413 F. 3d 1131, 1135-36 (10th Cir. 2005); *Hertz v. Luzenac America, Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004). Such complaints must, however, be based on discrimination; it is not enough that a plaintiff simply contends she was treated unfairly, as she must claim that the treatment was based on her protected status. The law protects an employee only against material adversity: "We speak of *material* adversity because we believe it is important to separate significant from trivial harms." *Burlington Northern*, 548 U.S. at 68. "Title VII...does not set forth a 'general civility code for the American workplace.'" *Id.* (quoting *Oncale*

*v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998)).  Thus, "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience."  *Burlington Northern*, 548 U.S. at 68.

In this case, Plaintiff contends that she complained about Bailey in March of 2007 and that, thereafter, the District retaliated against her.  Plaintiff argues that, prior to receiving Bailey's April 2007 reprimands, she complained about his conduct toward her.  According to Plaintiff, she accused him of harassing her.  The record reflects that, on March 1, 2007, Plaintiff sent a letter to David Gray of the AFL-CIO.[6]  Plaintiff's Exhibit 20.  In the letter, she complained about Bailey's conduct toward her, and she explained  incidents beginning in January and continuing to March which she believed reflected his unfair treatment regarding her job performance.  While her letter provides details regarding these incidents, it does not accuse Bailey of discrimination based on Plaintiff's gender or her race.  The only incident which has a possible racial connotation is described by Plaintiff as occurring during a discussion of her transfer from CNS to Human Resources; she states that Bailey told her three times that she could not serve two masters, a comment which offended her.  Plaintiff's Exhibit 20, p. 3.  There is no other incident that could be interpreted as having any racial connotation, and there are no comments related to Plaintiff's gender.

Plaintiff also argues she met with Shanahan in March 2007 to complain about Bailey, and she contends Bailey knew about this meeting because he asked her why she met with Shanahan.  Plaintiff's dep., Plaintiff's Exhibit 1, p. 68, lines 14-25; p. 70, line 19.  In fact, Plaintiff testified that

---

[6]Because the parties agree that Plaintiff was not covered by the Collective Bargaining Agreement ("CBA") applicable to some District employees, it is not clear why Plaintiff contacted Mr. Gray, who was apparently the CBA representative for District employees covered by its provisions.  The record discloses, however, that Plaintiff also selected Mr. Gray to represent her at the Level II complaint hearing.

Bailey asked her what he had done to cause her to complain to Shanahan; according to her testimony she told him "I just don't feel comfortable with you." *Id.*, p. 69, lines 20-22. Shanahan recalled having met with her and that she complained about Bailey; however, he did not recall any specific complaints. Shanahan dep., District Exhibit 4, p. 25, lines 15-25. Plaintiff does not contend that her conversation with Shanahan alleged that Bailey had discriminated against her because of her race or gender. Furthermore, Bailey was not aware that Plaintiff had accused him of such harassment during the time period around March 2007. Bailey dep., District Exhibit 2, p. 66, lines 15-19.

Bailey was aware that Plaintiff filed a Level II complaint, and he participated in the May 2, 2007 hearing regarding that complaint. *Id.* However, Plaintiff admits that, in her Level II complaint and the hearing on that complaint, she did not mention race or gender-based discrimination or harassment by Bailey or anyone else. Plaintiff's dep., Plaintiff's Exhibit 1, p. 84, lines 23-25; p. 85, lines 1-2. She claimed that Bailey "harassed" her, but made no reference to any belief that his treatment was related to her gender or her race. In fact, there is no evidence in the record to show that, at any time prior to filing the May 7 EEOC Charge, Plaintiff accused Bailey of racial discrimination; Bailey's statement regarding serving two masters is the only incident remotely related to Plaintiff's race.

The Court concludes that, for the time period of January 2007 through the filing of her EEOC Charge on May 7, 2007, the District, Bailey and Shanahan had no notice that Plaintiff was attempting to exercise rights protected by Title VII, § 1981 or any other federal or state law prohibiting employment discrimination. Plaintiff has failed to submit evidence sufficient to establish a *prima facie* case of retaliation during this time period. Although she exercised her rights

as a District employee to file complaints, those complaints did not allege discrimination based on race or gender and were not the protected activity which the law's anti-retaliation provisions are designed to protect. To the extent Plaintiff contends the District retaliated against her during this time period, the District is entitled to judgment.

Plaintiff also contends, however, that she suffered adverse employment consequences after filing the May 7, 2007 EEOC Charge. Because that Charge was based on race, the District was aware Plaintiff claimed racial discrimination when it received the Charge. The record does not show, however, when this was received. Because this Charge constitutes the exercise of protected rights and thus satisfies the second element of Plaintiff's *prima facie* burden, the Court must determine whether Plaintiff has presented facts to show that she suffered an adverse employment action which was caused by the exercise of her rights.

It is not disputed that Plaintiff's negative performance evaluation was prepared by Bailey at the end of May, a few weeks after she filed her first EEOC Charge. The record does not indicate whether Bailey was aware she had filed the charge prior to completing his evaluation. To establish an actionable retaliation claim, Plaintiff must show that the person making the adverse decision was aware that she had exercised protected rights. *Hennagir v. Utah Dept. of Corrections*, 587 F. 3d 1255, 1267 (10th Cir. 2009). However, the Court may infer that the District was aware of the filing by that time. Whether an unsatisfactory performance evaluation constitutes an adverse employment action for purposes of a retaliation claim has not been expressly addressed by this Circuit. However, an adverse action is that which "a reasonable employee would have found materially adverse." *Burlington Northern,* 548 U.S. at 67-68. For purposes of a retaliation claim, the action need not be an "ultimate employment decision," such as termination or demotion, to be

adverse. *Id.,* at 67. It is likely that a reasonable employee would have found Plaintiff's negative evaluation to be at least potentially materially adverse.

Assuming that the evaluation constitutes an adverse employment action and that Bailey knew Plaintiff had filed an EEOC charge based on race discrimination, Plaintiff must also show a causal connection between the exercise of her rights and the adverse action. That the evaluation was completed only a few weeks after the EEOC charge was filed is some evidence of a causal connection; close temporal proximity alone has been considered sufficient to establish the causation element of a *prima facie* retaliation claim. *Hennagir,* 587 F. 3d at 1266; *Past ran v. K-Mart Corp.*, 210 F. 3d 1201, 1206 (10th Cir. 2000). However, temporal relationship, it is not sufficient, without more, to show the pretext required to overcome an employer's justifiable business reason for an adverse action. *Pinkerton v. Colo. Dept. of Transportation,* 563 F. 3d 1052, 1066 (10th Cir. 2009).

In this case, the District's evidence shows the negative evaluation was consistent with Bailey's criticisms of Plaintiff's job performance well before she filed an EEOC charge, thus presenting a justifiable reason for the negative evaluation. However, the Court finds that summary judgment is precluded because Plaintiff has presented evidence suggesting that Bailey may have been aware of the EEOC charge prior to the evaluation. While her Level II complaint about him made no allegation of race discrimination, the Court cannot conclude with certainty that Plaintiff cannot present evidence to show pretext. Furthermore, it appears that the evaluation was at least one factor in the later decision to terminate Plaintiff.

It is not disputed that Plaintiff was terminated on October 22, 2007, and it cannot be disputed that termination is an adverse employment action. The record reflects that Shanahan recommended her termination on August 22, 2007; at that time, he knew Plaintiff had filed an EEOC charge. *See*

Shanahan August 3, 2007 memorandum to Porter, included in District Exhibit 19.  The District has presented a justifiable non-discriminatory reason for that recommendation, as it was based on performance and insubordination.  However, Plaintiff may present evidence to show that this decision was a pretext for discrimination.

Plaintiff's evidence of pretext is very limited and barely constitutes more than a mere scintilla, as required to overcome summary judgment.  However, the Court cannot conclude as a matter of law that she lacks evidence from which pretext could arguably be found.  Accordingly, as to her claim of retaliation for the time period following the filing of her May, 2007 EEOC charge, the Court concludes that summary judgment is improper.

4. Discriminatory discharge claim:

Pursuant to Title VII, it is unlawful for an employer to discharge any individual because of that individual's "race, color...sex, or national origin."  42 U. S. C. § 2000e-2(a)(1).  Section 1981 also prohibits a discriminatory discharge based on race, and the elements required to prove such a claim are the same under Title VII and § 1981.  *Carey v. City and County of Denver*, 534 F. 3d 1269, 1273 (10th Cir. 2008).  To establish a *prima facie* case of discriminatory discharge based on race, sex or national origin, Plaintiff must show that (1) she belongs to a protected class; (2) she was qualified for her job; (3) despite her qualifications, she was discharged; and (4) the job was not eliminated after her discharge.  *Zamora v. Elite Logistics, Inc*., 478 F. 3d 1160, 1171 n. 5 (10th Cir. 2007) (citing *English v. Colorado Dept. of Corrections,* 248 F. 3d 1002, 1008 (10th Cir. 2001)).  A plaintiff's *prima facie* burden in a discriminatory discharge claim is described as "light," as "only the most baseless of claims fails to satisfy it."  *Zamora*, 478 F. 3d at 1171.

The record establishes that Plaintiff cannot satisfy her *prima facie* case based on gender

discrimination.  Other than her own allegations, the record establishes that Plaintiff's gender discrimination claim is not supported by any evidence.  Plaintiff offers no evidence to suggest that the proffered reasons for her termination, poor performance and insubordination, were a pretext for gender discrimination.  Accordingly, the District is entitled to judgment on this claim.

With respect to her race discrimination claim, however, the same factual disputes that preclude judgment on her retaliation claim also render judgment inappropriate on this claim. Although Plaintiff's evidence is barely sufficient to constitute more than a "mere scintilla," the Court concludes that there are disputed material facts which preclude summary judgment on her claim that her termination was based on race discrimination.

## IV. Analysis - Due Process claims:

Plaintiff also asserts a claim, pursuant to 42 U. S. C. § 1983, alleging that the District violated her rights to due process under the Fourteenth Amendment.  Although the District's motion focuses on her procedural due process claim, Plaintiff's response brief argues that she has also asserted a substantive due process claim.

"A plaintiff cannot allege a violation of either procedural or substantive due process if he does not first show that he had a protected property right." *Poets v. Davis County*, 551 F. 3d 1188, 1192 (10th Cir. 2009).  It is unclear to the Court whether Plaintiff in this case attempts to base her claim on both her 2005 transfer and her 2007 termination.     According to the governing law, however, a transfer or reassignment does not implicate a protected property interest.  "'The general rule is that no protected property interest is implicated when an employer reassigns or transfers an employee absent a specific statutory provision or contract term to the contrary.'" *Id.* (quoting *Helen v. Rates*, 322 F. 3d 1229, 1240 (10th Cir. 2003)).

In this case, the District concedes that, for purposes of its motion, Plaintiff had a property interest in continuing her employment; accordingly, the initial requirement of a substantive or procedural due process claim is satisfied with respect to the termination of her employment. Plaintiff offers no evidence, however, that any District policy or procedure created a property interest with respect to her transfer; accordingly, a due process claim cannot be premised on the 2005 transfer. The Court's analysis is limited to whether Plaintiff can withstand summary judgment on her claim that her due process rights were violated in connection with her termination.

A. Procedural due process:

Plaintiff alleges that the District violated her due process rights in connection with the employee complaint procedure during her employment as well as her termination. The Fourteenth Amendment protects citizens from the deprivation of liberty or property without due process of law; procedural due process protects a citizen from such deprivation unless the decision resulting in the deprivation was preceded by the application of certain procedures ensuring fairness.

Analysis of a procedural due process claim requires the Court to determine whether 1) the individual possessed a property or liberty interest protected by due process; and, if so, whether 2) the individual was afforded an appropriate level of process. *Kirkland v. St. Vail Valley School District*, 464 F. 3d 1182 (10th Cir. 2006).

Although the District agrees that Plaintiff had a property interest in her continued employment, it contends she was afforded the appropriate level of process in connection with the hearing resulting in her termination. As the District points out, she received the process available through its established employee complaint procedure; a hearing was conducted on her Level II complaint, and the Board reviewed that complaint at Level III. With respect to her termination, the

required procedure was followed because the Board reviewed the recommendation to terminate her.

Although Plaintiff concedes there was a Level II hearing at which she was represented, called four witnesses, and submitted evidence, she contends she was not allowed to present all of her evidence. Plaintiff also contends that unidentified individuals gave false testimony at that hearing. Plaintiff fails, however, to identify witnesses or explain what evidence she was allegedly prohibited from presenting. As with her other claims, Plaintiff bears the burden of proving her due process claim. To overcome summary judgment, she cannot rely on her allegation or her conclusory belief that she was deprived of procedural due process; she must present facts on which that allegation is based.

Plaintiff has failed to present evidence from which a reasonable jury could conclude that her procedural due process rights were denied. The District is entitled to judgment on this claim.

B. Substantive due process:

According to the Tenth Circuit, even if an employee has a protected interest in continued employment, she is not necessarily protected by the doctrine of substantive due process. *Poets*, 551 F. 3d at 1193 n. 1(citing *Hennigh v. City of Shawnee*, 155 F. 3d 1249, 1257 (10th Cir. 1998)). "We have not decided whether an employee with a property right in state-created employment is protected by the substantive due process clause." *Id.* "We note that our circuit precedent does not clearly delineate what specific property interests in employment are fundamental, and thus protected by the doctrine of substantive due process." *Poets*, 551 F. 3d at 1193 n. 1.

Assuming that Plaintiff could establish the requisite protected property interest, her substantive due process claim requires a showing that the District engaged in "egregious conduct" constituting an "abuse of power" that "shocks the conscience." *Williams v. Berney,* 519 F. 3d 1216,

1220 (10th Cir. 2008) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998)).   As the

Circuit explained in *Williams:*

> Substantive due process arises from the Fourteenth Amendment's protections against
> governmental deprivations "without due process of law." U.S. Const. amend. XIV,
> § 1. Under this framework, due process protections are accorded primarily "to
> matters relating to marriage, family, procreation, and the right to bodily integrity."
> *Albright v. Oliver*, 510 U.S. 266, 272, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). And,
> moreover, in extending these concepts to further bar "certain government actions
> regardless of the fairness of the procedures used to implement them," the Supreme
> Court has emphasized "that only the most egregious official conduct can be said to
> be arbitrary in the constitutional sense." *County of Sacramento v. Lewis*, 523 U.S.
> 833, 840, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (quotations omitted).

*Williams,* 519 F. 3d at 1220. Moreover, "substantive due process protections extend only to

'deliberately wrongful government decisions rather than merely negligent government conduct.'"

*Ward v. Anderson*, 494 F. 3d 929, 938 (10th Cir. 2007)(quoting *Uhlrig v. Harder*, 64 F. 3d 567, 573

(10th Cir. 1995)).   "The 'ultimate standard' for assessing an alleged violation of substantive due

process is 'whether the challenged government action shocks the conscience of federal judges.'" *Id.*

at 937 (quoting *Moore v. Guthrie*, 438 F. 3d 1036, 1040 (10th Cir. 2006)).   "This standard is not an

easy one for a plaintiff to satisfy." *Id.*   As the Circuit explained:

> It is well settled that negligence is not sufficient to shock the conscience.   In
> addition, a plaintiff must do more than show that the government actor intentionally
> or recklessly caused injury to the plaintiff by abusing or misusing government power.
> The plaintiff must demonstrate a degree of outrageousness and a magnitude of
> potential or actual harm that is truly conscience shocking.   This is a high level of
> outrageousness.

*Ward*, 494 F. 3d at 937-38 (citing *Camuglia v. The City of Albuquerque*, 448 F. 3d 1214, 1222-23

(10th Cir. 2006)).

Plaintiff has failed to present evidence that rises to this level.   Even if the District's action

was viewed as incorrect or even as discriminatory, it does not remotely constitute an outrageous or

shocking abuse of power.  Plaintiff's evidence is insufficient to overcome summary judgment as to

her substantive due process claim.  Accordingly, the District's motion is granted as to that claim.

V. Analysis -Pendent State claims:

In addition to her federal claims, Plaintiff alleges several pendent state law claims.  The

District seeks judgment on each asserted state law claim; accordingly, each will be discussed.

a.  Plaintiff's *Burk* claim:

Plaintiff alleges that, pursuant to *Burk v. K-Mart Corp.*, 770 P. 2d 74 (Okla. 1989), she was

terminated in violation of Oklahoma public policy, and she seeks actual and punitive damages for

this tort claim.   The District argues it is entitled to judgment on this claim because Plaintiff had an

employment contract, and *Burk* tort claims are limited to at-will employees.    Plaintiff contends

*Burk* is not limited to at-will employees.

According to the Oklahoma Supreme Court, *Burk* "recognized an actionable common-law

tort for an at-will employee's discharge in contravention of a clear mandate of public policy."

*Darrow v. Integris Health, Inc.*, 176 P. 3d 1204, 1208 n. 8 (Okla. 2008).  "'The elements of a claim

for wrongful discharge of an at-will employee articulated in *Burk* and its progeny can be

summarized.  A viable *Burk* claim must allege"' the following:

> (1) an actual or constructive discharge (2) *of an at-will employee* (3) in significant
> part for a reason that violates an Oklahoma public policy goal (4) that is found in
> Oklahoma's constitutional, statutory, or decisional law or in a federal constitutional
> provision that prescribes a norm of conduct for Oklahoma and (5) no statutory
> remedy exists that is adequate to protect the Oklahoma policy goal.

*Kruchowski v. The Weyerhauser Co.*, 202 P. 3d 144, 151-52 (Okla. 2009) (emphasis added) (quoting

*Vasek v. Board of County Comm'rs of Noble County,* 186 P.3d 928, 932 (Okla.2008)).  *See also*

*McCrady v. Okla. Dept. of Pub. Safety*, 122 P.3d 473, 475 (Okla. 2005).

As Plaintiff notes, the parameters of a *Burk* claim have been expanded by the Oklahoma Supreme Court; however, the focus of post- *Burk* decisions has been the nature of the public policy required to support a claim and the adequacy of statutory remedies otherwise available to a plaintiff. *See Kruchowski*, 202 P. 3d at 147-152 (discussing decisions applying *Burk* since the decision was published). These decisions do not hold that a *Burk* claim is available to a discharged employee whose employment was governed by the terms of a written contract; in fact, *Kruchowski* reiterated that one of the elements a *Burk* plaintiff must prove is status as an "at-will employee." *Id.*, at 151. Plaintiff offers no authority in support of her contention that *Burk* creates a cause of action for an individual who has a contract of employment for a definite time period or requiring cause for termination.

The Court concludes that, because the undisputed facts establish that Plaintiff had a written contract of employment requiring that her termination be supported by cause, she was not an employee at will. The Oklahoma decisions interpreting the *Burk* tort have limited its application to at-will employment relationships in which cause is not required for termination. Although Plaintiff attempts to show that she had no contract of employment at the time of her termination, the undisputed facts establish that there was a contract in place. In fact, Plaintiff asserts a separate cause of action alleging a breach of that contract. The District treated her termination as based on the contract, and afforded her the procedures applicable to contract employees. According to the District, Plaintiff was terminated for cause based on inadequate job performance and insubordination. That Plaintiff disagrees with the District's stated cause for her termination does not convert the employment relationship into an at-will relationship. The District is entitled to judgment on Plaintiff's *Burk* claim.

b.  Breach of contract claim:

Plaintiff also contends that the District breached her contract of employment by terminating her.   To the extent that this claim is based on a contention that the District did not terminate her for cause because the termination was based on unlawful race discrimination, the factual disputes noted, *supra,* preclude summary judgment on the breach of contract claim.

c.  Negligent supervision, training and retention of employees:

Plaintiff also asserts a claim based on the District's alleged negligence in supervising, training, or retaining  Bailey as an employee.  The District seeks judgment on this claim, arguing that Plaintiff has offered no evidence to support it; the District also relies on the Oklahoma Governmental Tort Claims Act immunity provisions rendering an entity, including a school board, immune from liability for the torts of its employees.

Oklahoma has recognized a tort cause of action against an employer based on that employer's negligence in hiring, retaining, or supervising an employee who has caused harm to a third party.   In such cases, however, "[t]he critical element for recovery is the employer's prior knowledge of the servant's propensities to create the specific danger resulting in damage." *N.H. v. Presbyterian Church (U.S.A.)* 998 P.2d 592, 600 (Okla.1999).   As the Oklahoma Supreme Court explained:

> Employers may be held liable for negligence in hiring, supervising or retaining an employee.  In such instances, recovery is sought for the employer's negligence.  The claim is based on an employee's harm to a third party through employment.  An employer is found liable, if--at the critical time of the tortious incident-- the employer had reason to believe that the person would create an undue risk of harm to others. Employers are held liable for their prior knowledge of the servant's propensity to commit the very harm for which damages are sought.

*Id.*  In this case, Plaintiff has not alleged, and there is no evidence to support, facts showing that

Bailey or anyone else involved in the decisions regarding Plaintiff had a history of discriminating against employees. The employer's knowledge must have existed at the time of the alleged tortious incident; Plaintiff does not explain the incident which she contends is the basis for this claim. Construing her allegations most liberally in her favor, she appears to argue that the District knew of Bailey's alleged discrimination because she complained about him to Shanahan. However, the record establishes that, until she filed a May 2007 EEOC Charge of Discrimination, she did not characterize his conduct as discrimination based on her race or gender. There is insufficient evidence to support a claim for negligent supervision or retention.

Plaintiff also apparently contends the District failed to train Bailey regarding its anti-discrimination policies. That claim is not supported by the evidence in the record. The District maintained written antidiscrimination policies. District Exhibit 22. Bailey testified that he was familiar with the policies and that he usually reviewed them at least once a year. Bailey dep., District Exhibit 2, p. 51, lines 11-15. Bailey has also attended training sessions regarding the policies. Plaintiff focuses on the fact that, in his deposition, Bailey said he had attended only five or six training sessions during his 27-year tenure with the District. The Court finds the number of sessions he may have attended does not render the District liable on Plaintiff's theory that it failed to train its employees. That Bailey did not attend additional sessions does not mean the District did not make training available.

There is nothing in the record to reflect that Bailey, Shanahan, or any other District employee was unfamiliar with the antidiscrimination policies or that the District failed to provide adequate information or training to its employees. The District is entitled to judgment on Plaintiff's claim.

d. Intentional infliction of emotional distress claim:

Plaintiff also alleges that the District is liable for intentional infliction of emotional distress based on the alleged conduct of Bailey or others toward her during her employment. In its motion, the District argues it is immune from liability for this tort pursuant to the GTCA, as any employee engaging in conduct rising to the level of intentional infliction of emotional distress cannot be acting within the scope of his employment. Pursuant to the GTCA, the District is liable only for employee torts occurring while the employee acted in the scope of his employment. 51 Okla. Stat. § 163(C); *see also Carswell v. Oklahoma State University*, 995 P. 2d 1118, 1123 (Okla. 1999). The District also argues the evidence establishes that, even if the alleged conduct was within the scope of Bailey's employment, it does not rise to the level required to support this cause of action.

The Court agrees that the evidence is insufficient to create a material fact issue on this claim, even if the claim is not barred by the GTCA. An action for intentional infliction of emotional distress will lie only where there is extreme and outrageous conduct coupled with severe emotional distress. *Gaylord Entertainment Co. v. Thompson*, 958 P.2d 128, 149 ( Okla. 1988). To prevail on this claim, Plaintiff must plead and prove facts to show that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) Plaintiff actually experienced emotional distress; and (4) the emotional distress was severe. *Daemi v. Church's Fried Chicken, Inc.,* 931 F.2d 1379, 1387 (10th Cir.1991). To satisfy the element of extreme or outrageous conduct, Plaintiff must show that the District's conduct was "'beyond all possible bounds of decency in the setting in which it occurred,' or 'utterly intolerable in a civilized community.'" *Thompson v. State Farm Fire & Casualty Co.*, 34 F. 3d 932, 934 (10th Cir. 1994) (quoting *Eddy v. Brown*, 715 P.2d 74, 77 (Okla. 1986)). Whether the alleged conduct may reasonably be regarded as sufficiently extreme and outrageous to satisfy these standards is a question of law for the Court.

*Gaylord*, 958 P. 2d at 149 ("It is the trial court's responsibility initially to determine whether the defendant's conduct may reasonably be regarded as sufficiently extreme and outrageous to meet the standards.") "Conduct which, though unreasonable, is neither 'beyond all possible bounds of decency' in the setting in which it occurred, nor is one that can be 'regarded as utterly intolerable in a civilized community' falls short of having actionable quality." *Id.* (quoting *Eddy*, 715 P. 2d at 76.)

Plaintiff contends that Bailey humiliated her in front of her peers by criticizing her work performance and that she was so upset by his criticism of her work that she sought medical treatment. Assuming all of Plaintiff's allegations regarding Bailey's conduct and comments are true, this conduct does not rise to the level of that required to sustain a cause of action. Although the comments may have been harsh and Plaintiff may have felt humiliated by the criticism, the evidence on which Plaintiff relies falls well short of extreme and outrageous conduct. The District is entitled to judgment on this claim.

VI. Analysis - Fair Labor Standards Act claim/state law claim for unpaid leave:

The District also seeks judgment on Plaintiff's claim that it violated the Fair Labor Standards Act ("FLSA") and Okla. Stat. tit. 40 § 165.3 *et seq.* by failing to pay her "wages and money earned during her employment." Second Amended Complaint, ¶ 53. She seeks lost earnings and liquidated damages based on an alleged willful violation of the law. *Id.* at ¶ 54.

In its motion, the District argues that the undisputed evidence in the record reflects that, upon her termination, Plaintiff was paid all outstanding salary and leave time to which she was entitled.

In her response brief, Plaintiff concedes her claim is not properly brought under the FLSA; she admits she was not entitled to overtime compensation; instead, she states this claim is more

properly characterized as one for "conversion and/or unpaid wages" pursuant to Okla. Stat. tit. 40 §§ 165.1, *et seq.* In support of this contention, Plaintiff submits her pay stub for the pay period preceding her final paycheck, and notes it shows a balance of unused vacation and other leave. Plaintiff's Exhibit 54. Her final paycheck reflects a zero balance for leave. Plaintiff's Exhibit 55; District Exhibit 20. However, in another portion of the final paycheck, a balance of unused leave is shown. Although the pay stubs could be interpreted as meaning Plaintiff was paid for accrued leave, they could also be interpreted, as Plaintiff argues, as meaning she was not paid for that leave.

The Court is not familiar with the manner in which the District documents payment of accrued leave upon an employee's termination, and the District does not offer an explanation of its procedure. Accordingly, there is a factual dispute regarding the issue of whether Plaintiff is owed additional funds attributable to accrued and unused leave.

To the extent Plaintiff asserted a claim for compensation owed pursuant to the FLSA, the District's motion is granted, as Plaintiff admits she is not entitled to such compensation. However, to the extent she was entitled to receive additional funds based on accrued and unpaid leave under Oklahoma law, disputed facts preclude summary judgment, and the motion is denied.

## VII. Conclusion:

For the foregoing reasons, the District's Motion [Doc. No. 34] is GRANTED in part and DENIED in part. The motion is granted as to all claims except 1) Plaintiff's claim of unlawful retaliation in violation of federal law, based on her race, during the time period after her May, 2007 EEOC Charge of Discrimination; 2) Plaintiff's claim of discriminatory discharge in violation of federal law, based on her race; 3) Plaintiff's state law claim of breach of contract; and 4) Plaintiff's state law claim for payment for accrued leave. Because material fact disputes preclude judgment

on those four claims, the case will proceed accordingly.   The District's motion is granted as to all

other claims asserted against it by Plaintiff.

　　　　IT IS SO ORDERED this 12th  day of March, 2010.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE